

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# FELONY

## INDICTMENT FOR CONSPIRACY TO COMMIT MAIL FRAUD AND MAIL FRAUD

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. **21-110** |
| v. | * | SECTION: **SECT.F MAG.3** |
| ASHLEY McGOWAN | * | VIOLATIONS: 18 U.S.C. § 371 |
| LERTRICE JOHNSON | | 18 U.S.C. § 1341 |
| DAVIENQUE JOHNSON | * | 18 U.S.C. § 2 |
| HERBERT ALLEN | | |
| TROYLYNN BROWN | * | |
| DION RIDLEY | | |
| JARVIS BROWN | * | |

\*       \*       \*

The Grand Jury charges that:

## COUNT 1
### (Conspiracy to Commit Mail Fraud)

**A.    AT ALL TIMES MATERIAL HEREIN:**

1.    Defendants **ASHLEY McGOWAN ("McGOWAN"), LERTRICE JOHNSON
("L. JOHNSON"), DAVIENQUE JOHNSON ("D. JOHNSON"), HERBERT ALLEN
("ALLEN"), TROYLYNN BROWN ("T. BROWN"), DION RIDLEY ("RIDLEY"),** and
**JARVIS BROWN ("J. BROWN")** resided in the New Orleans metropolitan area and were
involved in staged accidents with tractor-trailers occurring in the New Orleans area in 2016 and
2017.

1

2.      A "slammer" was an individual who drove a vehicle and intentionally collided with 18-wheeler tractor-trailers and other commercial vehicles in order to stage accidents.

3.      A "spotter" was an individual who would follow a slammer in a separate vehicle and would pick up the slammer after the staged accident in order to flee the scene and evade detection.

4.      Damien Labeaud ("Labeaud") served as both a slammer and a spotter.

5.      Roderick Hickman ("Hickman") served as both a slammer and a spotter.

6.      Attorneys A, B, and C were personal injury attorneys licensed to practice in Louisiana, and the founding members of a law firm in New Orleans, Louisiana.

7.      Attorney D was a personal injury attorney licensed to practice in Louisiana. Attorney D worked at the law firm of Attorneys A, B, and C.

8.      The law firm of Attorneys A, B, and C referred cases to other attorneys known to the Grand Jury.

### The K. Robinson Lawsuit

9.      The intersection of Chickasaw Street and Louisa Street was located in the Eastern District of Louisiana.

10.     Transportation Consultants, Inc. ("TCI") was an interstate commercial trucking company headquartered in Texarkana, Arkansas.

11.     Truck Driver A worked for TCI and resided in Louisiana.

12.     The Insurance Company of the State of Pennsylvania ("Ins. Co. of Pennsylvania") was headquartered in New York, New York.

13.     American International Group, Inc. ("AIG"), headquartered in New York, New York, was the ultimate parent company that owned the Ins. Co. of Pennsylvania.

14.     AIG maintained offices throughout the United States and worldwide.

15.     TCI was insured by AIG via the Ins. Co. of Pennsylvania, its wholly-owned subsidiary.

16.     TCI was insured up to $1,000,000.00 per claim for automobile accidents.

17.     GEICO Casualty Company ("GEICO") maintained offices throughout the United States, including Macon, Georgia.

18.     GEICO insured the vehicle purportedly driven by Keishira Robinson ("K. Robinson") on or about June 8, 2016.

19.     On or about June 6, 2017, Attorney D filed a Petition for Damages in the Civil District Court for the Parish of Orleans, State of Louisiana ("CDC"), on behalf of K. Robinson, **McGOWAN**, **L. JOHNSON**, and **D. JOHNSON** ("K. Robinson Lawsuit").

20.     The K. Robinson Lawsuit sought to recover damages from the Ins. Co. of Pennsylvania, TCI, Truck Driver A, and GEICO, in its capacity as K. Robinson's uninsured/underinsured motorist carrier.

21.     The Ins. Co. of Pennsylvania, TCI, and Truck Driver A utilized a law firm based in Metairie, Louisiana to provide legal representation with respect to the staged accident that occurred on June 8, 2016, between the TCI tractor-trailer and a vehicle owned by K. Robinson.

### The T. Brown/J. Brown Lawsuit and Allen Cross-Claim

22.     The intersection of Tchoupitoulas Street and Calliope Street was located in the Eastern District of Louisiana.

23.     Frisard's Trucking Company, Inc. ("Frisard's") was an interstate commercial trucking company based in Gramercy, Louisiana.

24.     Truck Driver B worked for Frisard's and resided in Louisiana.

25.     Arch Insurance Company ("Arch") was headquartered in Jersey City, New Jersey and maintained offices throughout the United States.

26.     Frisard's was insured by Arch.

27.     Louisiana Farm Bureau Casualty Insurance Company ("Farm Bureau") maintained offices throughout Louisiana.

28.     Farm Bureau insured the vehicle purportedly driven by **ALLEN** on or about June 28, 2017.

29.     On or about April 27, 2018, an attorney known to the Grand Jury filed a Petition for Damages in CDC, on behalf of **T. BROWN** and **RIDLEY** ("T. Brown Lawsuit").

30.     On or about June 4, 2018, an attorney known to the Grand Jury filed a Petition for Damages in CDC on behalf of **J. BROWN** ("J. Brown Lawsuit").

31.     On or about June 14, 2018, Attorney D filed a cross-claim in CDC on behalf of **ALLEN** in the T. Brown Lawsuit ("Allen Cross-Claim").

32.     The T. Brown Lawsuit and J. Brown Lawsuit sought to recover damages from Frisard's, Arch, Truck Driver B, **ALLEN**, and Farm Bureau, in its capacity as **ALLEN**'s uninsured/underinsured motorist carrier.

33.     The Allen Cross-Claim sought to recover damages from Frisard's, Arch, Truck Driver B, and Farm Bureau.

34.     On or about November 21, 2018, the T. Brown Lawsuit and J. Brown Lawsuit were consolidated into one lawsuit in CDC ("T. Brown/J. Brown Lawsuit").

35.     Frisard's, Arch, and Truck Driver B utilized a law firm based in Baton Rouge, Louisiana to provide legal representation with respect to the staged accident that occurred on June 28, 2017, between the Frisard's tractor-trailer and a vehicle owned by **ALLEN**.

4

**B.    THE CONSPIRACY:**

Beginning at a time unknown, and continuing until the date of this Indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **ASHLEY McGOWAN, LERTICE JOHNSON, DAVIENQUE JOHNSON, HERBERT ALLEN, TROYLYNN BROWN, DION RIDLEY, JARVIS BROWN,** and others known and unknown to the Grand Jury, willfully and knowingly did combine, conspire, confederate, and agree to devise a scheme and artifice to defraud and to obtain money and property from insurance companies and interstate trucking companies by means of materially false and fraudulent pretenses, representations, and promises, and willfully caused mail matter to be delivered by Federal Express ("FedEx") for the purpose of executing or attempting to execute the Scheme to Defraud set forth in Section C, in violation of Title 18, United States Code, Section 1341.

**C.    THE SCHEME TO DEFRAUD:**

1.    It was part of the scheme and artifice to defraud that, beginning on a date unknown, but before on or about 2015, Labeaud and Hickman worked as "runners" for Attorney A, in that Labeaud and Hickman would refer persons involved in legitimate motor vehicle accidents to Attorney A in exchange for money. It was agreed that Attorney A would pay Labeaud and Hickman $1,000.00 per passenger for accidents with tractor-trailers and $500.00 per passenger for accidents that did not involve tractor-trailers.

2.    It was further part of the scheme and artifice to defraud that, while working together as runners, Labeaud and Hickman brought at least twenty (20) accidents to Attorney A.

3.    It was further part of the scheme and artifice to defraud that, in or around 2015, Labeaud and Hickman also began working together to stage accidents.

4.      It was further part of the scheme and artifice to defraud that Labeaud and Hickman both served as slammers and spotters in staged accidents.

5.      It was further part of the scheme and artifice to defraud that Labeaud and Hickman agreed to share the proceeds they obtained for accidents that they staged together.

6.      It was further part of the scheme and artifice to defraud that Labeaud and Hickman brought persons involved in illegally staged accidents to the law firm of Attorneys A, B, and C in exchange for money, and that individuals in the law firm knew that Labeaud and Hickman were staging accidents.

7.      It was further part of the scheme and artifice to defraud that Labeaud, Hickman, and Attorney A would sometimes discuss the staging of accidents before they happened.

8.      It was further part of the scheme and artifice to defraud that in order to conceal their activity, Labeaud, Hickman, and Attorney A communicated through coded language, including fishing terms, to refer to staged accidents.

9.      It was further part of the scheme and artifice to defraud that Attorney A would pay Labeaud and Hickman via cash and check for staged accidents.

10.     It was further part of the scheme and artifice to defraud that Attorney A would sometimes loan Labeaud and Hickman money and then subtract the loan amount when calculating how much was owed to Labeaud and Hickman for a staged accident.

11.     It was further part of the scheme and artifice to defraud that Attorney A represented Labeaud and Hickman in collisions that they were each involved in, and concealed subsequent payments to them for staging accidents as advances on their settlement and/or loans.

12.    It was further part of the scheme and artifice to defraud that the law firm of Attorneys A, B, and C employed Labeaud to complete various tasks as another way to conceal payments to him for staging accidents.

13.    It was further part of the scheme and artifice to defraud that, from approximately 2015 to approximately 2017, Labeaud and Hickman staged at least one hundred (100) accidents.

14.    It was further part of the scheme and artifice to defraud that Labeaud and Hickman occasionally utilized other individuals besides each other to assist with staging accidents.

### The June 8, 2016, Staged Accident

15.    It was further part of the scheme and artifice to defraud that, on or before June 8, 2016, Anthony Robinson ("A. Robinson"), K. Robinson's father, arranged for K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN**, to participate in a staged automobile accident with Labeaud and then knowingly sought to obtain money through fraud.

16.    It was further part of the scheme and artifice to defraud that, on the morning of June 8, 2016, A. Robinson, his wife, Audrey Harris ("Harris"), K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN** all met with Labeaud at an apartment complex located on Bundy Road in New Orleans to discuss staging an automobile accident with a tractor-trailer to obtain money through fraud.

17.    It was further part of the scheme and artifice to defraud that K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and Labeaud departed from the apartment complex with Labeaud driving K. Robinson's gray 2006 Mazda MZ3 ("Mazda").

18.    It was further part of the scheme and artifice to defraud that A. Robinson, Harris, and **McGOWAN** followed in a separate vehicle driven by A. Robinson.

19.    It was further part of the scheme and artifice to defraud that Labeaud drove K. Robinson, **L. JOHNSON**, and **D. JOHNSON** in the Mazda to locate another vehicle to collide with in the area of Chickasaw Street and Louisa Street in New Orleans.

20.    It was further part of the scheme and artifice to defraud that, at approximately 1:07 P.M., Labeaud, while driving on Chickasaw Street near the intersection of Louisa Street, observed a 2012 Volvo tractor-trailer owned by TCI and loaded with slabs of granite stop at a stop sign before making a right turn onto Louisa Street, and that Labeaud intentionally accelerated and collided with the TCI tractor-trailer as it was turning.

21.    It was further part of the scheme and artifice to defraud that Labeaud exited K. Robinson's Mazda after the collision, and K. Robinson relocated from the front passenger seat and got behind the wheel of the Mazda to make it appear that she was driving the vehicle at the time of the staged accident.

22.    It was further part of the scheme and artifice to defraud that A. Robinson and Harris picked up Labeaud after Labeaud fled from the scene.

23.    It was further part of the scheme and artifice to defraud that, at the same time, **McGOWAN** exited the vehicle being driven by A. Robinson and entered the back seat of K. Robinson's Mazda to make it appear that she had been a passenger in the Mazda during the staged accident.

24.    It was further part of the scheme and artifice to defraud that, after the staged accident, **D. JOHNSON** relocated from the back row of the Mazda to the front passenger seat.

25.    It was further part of the scheme and artifice to defraud that the spotter vehicle being driven by A. Robinson flagged down the TCI tractor-trailer to inform Truck Driver A that he had hit the Mazda.

8

26.     It was further part of the scheme and artifice to defraud that the New Orleans Police Department ("NOPD") was contacted to report the staged automobile accident.

27.     It was further part of the scheme and artifice to defraud that K. Robinson and **D. JOHNSON** falsely reported to the NOPD that K. Robinson had been the driver of the Mazda, that the TCI tractor-trailer had struck the Mazda, and that **McGOWAN** had been a passenger in the vehicle at the time of the collision.

28.     It was further part of the scheme and artifice to defraud that Labeaud contacted Attorney A multiple times on the day of the staged accident, both before and after the time of the collision.

29.     It was further part of the scheme and artifice to defraud that, after NOPD departed the scene, A. Robinson, Harris, K. Robinson, **L. JOHNSON**, **D. JOHNSON**, **McGOWAN**, and Labeaud all rendezvoused at the law firm of Attorneys A, B, and C.

30.     It was further part of the scheme and artifice to defraud that Attorney D met with K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN** in order to discuss Attorney D's representation of them.

31.     It was further part of the scheme and artifice to defraud that Attorney D also represented K. Robinson in conjunction with another staged accident that had occurred approximately eight months prior.

32.     It was further part of the scheme and artifice to defraud that Attorney A paid Labeaud in cash for staging the June 8, 2016 accident.

33.     It was further part of the scheme and artifice to defraud that Attorney A caused approximately $1,200.00 cash to be withdrawn from Attorney A's personal law firm account on June 8, 2016, the day of the collision.

9

34.     It was further part of the scheme and artifice to defraud that Attorney A caused approximately $2,500.00 cash to be withdrawn from Attorney A's personal law firm account on June 10, 2016, two days after the collision.

35.     It was further part of the scheme and artifice to defraud that, on or about June 6, 2017, Attorney D filed the K. Robinson Lawsuit in CDC.

36.     It was further part of the scheme and artifice to defraud that K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN** were treated by known doctors and healthcare providers at the direction of Attorney D.

37.     It was further part of the scheme and artifice to defraud that K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN** were given loans or advances on their settlement by the law firm of Attorneys A, B, and C.

38.     It was further part of the scheme and artifice to defraud that, on or about January 10, 2018, **L. JOHNSON** and **D. JOHNSON** each provided false testimony in depositions taken in conjunction with the K. Robinson Lawsuit, and, on or about January 11, 2018, K. Robinson and **McGOWAN** each provided false testimony in their depositions in conjunction with the K. Robinson Lawsuit.

39.     It was further part of the scheme and artifice to defraud that, on or about April 17, 2018, Attorney D demanded approximately $100,000.00 in settlement for K. Robinson, $325,000.00 in settlement for **L. JOHNSON**, $375,000.00 in settlement for **D. JOHNSON**, and $425,000.00 in settlement for **McGOWAN**.

40.     It was further part of the scheme and artifice to defraud that, on or about September 3, 2018, Attorney D demanded policy limits in settlement for K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN**.

**The June 28, 2017, Staged Accident**

41.    It was further part of the scheme and artifice to defraud that, on or before June 28, 2017, **ALLEN, T. BROWN, RIDLEY**, and **J. BROWN** arranged to participate in a staged accident with Hickman and then knowingly sought to obtain money through fraud.

42.    It was further part of the scheme and artifice to defraud that Hickman drove **ALLEN, T. BROWN, RIDLEY**, and **J. BROWN** in **ALLEN**'s gray 2007 Chevrolet Impala ("Impala") to locate another vehicle to collide with.

43.    It was further part of the scheme and artifice to defraud that Labeaud followed the Impala in a separate black vehicle.

44.    It was further part of the scheme and artifice to defraud that, at approximately 2:08 P.M., Hickman, while driving on Tchoupitoulas Street near the intersection of Calliope Street, observed a 2012 Freightliner 80000 tractor-trailer owned by Frisard's making a left turn onto Calliope street, and that Hickman intentionally accelerated and collided with the Frisard's tractor-trailer as it was turning.

45.    It was further part of the scheme and artifice to defraud that Hickman exited **ALLEN**'s Impala after the collision, and **ALLEN** got behind the wheel of the Impala to make it appear that he had been driving the vehicle at the time of the staged accident.

46.    It was further part of the scheme and artifice to defraud that Labeaud picked up Hickman after Hickman fled from the scene.

47.    It was further part of the scheme and artifice to defraud that Labeaud and Hickman flagged down the Frisard's tractor-trailer to inform Truck Driver B that he had hit the Impala.

48.    It was further part of the scheme and artifice to defraud that the NOPD was contacted to report the staged automobile accident.

49. It was further part of the scheme and artifice to defraud that **ALLEN** and **J. BROWN** falsely reported to the NOPD that **ALLEN** had been the driver of the Impala and that the Frisard's tractor-trailer had struck the Impala.

50. It was further part of the scheme and artifice to defraud that Hickman contacted Attorney A approximately thirty minutes after the staged accident occurred, and Attorney A contacted Hickman approximately an hour after Hickman's call.

51. It was further part of the scheme and artifice to defraud that Hickman and **ALLEN** contacted each other approximately eleven times on the day of the staged accident, and approximately two times two days after the collision.

52. It was further part of the scheme and artifice to defraud that Hickman and Labeaud contacted each other the day before the collision and on the day of the collision.

53. It was further part of the scheme and artifice to defraud that, after NOPD departed the scene, Hickman directed **ALLEN**, **T. BROWN**, **RIDLEY**, and **J. BROWN** to the law firm of Attorneys A, B, and C.

54. It was further part of the scheme and artifice to defraud that Attorney A paid Hickman in cash and check for staging the June 28, 2017 collision.

55. It was further part of the scheme and artifice to defraud that Attorney A issued a check for approximately $800.00 to Hickman from Attorney A's personal law firm account on or about June 29, 2017, the day after the staged accident.

56. It was further part of the scheme and artifice to defraud that, after the collision but prior to the filing of the lawsuits, the law firm of Attorneys A, B, and C referred **T. BROWN** and **RIDLEY** to an attorney known to the Grand Jury, **J. BROWN** to another attorney known to the Grand Jury, and maintained legal representation of **ALLEN**.

12

57.    It was further part of the scheme and artifice to defraud that, on or about April 27, 2018, an attorney known to the Grand Jury filed the T. Brown Lawsuit in CDC.

58.    It was further part of the scheme or artifice to defraud that, on or about June 4, 2018, an attorney known to the Grand Jury filed the J. Brown Lawsuit in CDC.

59.    It was further part of the scheme or artifice to defraud that, on or about June 14, 2018, Attorney D filed the Allen Cross-Claim in CDC.

60.    It was further part of the scheme and artifice to defraud that **ALLEN**, **T. BROWN**, **RIDLEY**, and **J. BROWN** were treated by known doctors and healthcare providers at the direction of their attorneys.

61.    It was further part of the scheme and artifice to defraud that, on or about January 17, 2019, **ALLEN** and **J. BROWN** each provided false testimony in depositions taken in conjunction with the T. Brown/J. Brown Lawsuit, and, on or about February 4, 2019, **T. BROWN** and **RIDLEY** each provided false testimony in their depositions in conjunction with the T. Brown/J. Brown Lawsuit.

62.    It was further part of the scheme and artifice to defraud that, on or about February 19, 2019, an attorney known to the Grand Jury demanded approximately $450,000.00 in settlement for **T. BROWN** and approximately $475,000.00 in settlement for **RIDLEY**.

63.    It was further part of the scheme and artifice to defraud that, on or about February 12, 2020, Attorney D demanded approximately $210,000.00 in settlement for **ALLEN**.

64.    It was further part of the scheme and artifice to defraud that, on or about February 20, 2020, an attorney known to the Grand Jury made a reduced demand of approximately $295,000.00 in settlement for each of **T. BROWN** and **RIDLEY**.

65.    It was further part of the scheme and artifice to defraud that, on or about March 17, 2020, an attorney known to the Grand Jury demanded approximately $181,055.36 in settlement for **J. BROWN**.

**D.    OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY:**

**The June 8, 2016, Staged Accident**

The below listed Overt Acts all occurred on or about June 8, 2016, unless noted otherwise.

1.    K. Robinson, **L. JOHNSON**, and **D. JOHNSON** agreed to allow Labeaud to drive K. Robinson's Mazda in order to stage an automobile accident, while A. Robinson, Harris, and **McGOWAN** travelled behind them in a spotter vehicle.

2.    At approximately 10:20 A.M. and 10:24 A.M., Labeaud called Attorney A.

3.    At approximately 1:07 P.M., Labeaud, while driving on Chickasaw Street near the intersection of Louisa Street, intentionally collided with a TCI tractor-trailer.

4.    After the staged accident, Labeaud fled the scene, and was picked up by the spotter vehicle.

5.    K. Robinson got behind the wheel of the Mazda to make it appear that she was driving the vehicle at the time of the staged accident.

6.    **McGOWAN** exited the spotter vehicle and entered the back seat of the Mazda to make it appear that she had been a passenger during the staged accident.

7.    **D. JOHNSON** relocated from the back row of the Mazda to the front passenger seat.

8.    The spotter vehicle flagged down the TCI tractor-trailer in order to inform Truck Driver A that he had hit the Mazda.

9.    At approximately 1:15 P.M., NOPD was notified of the automobile collision.

10.     At approximately 1:20 P.M., Labeaud called Attorney A.

11.     At approximately 1:25 P.M., NOPD arrived at the scene of the staged accident, at which time K. Robinson and **L. JOHNSON** falsely reported to the NOPD that K. Robinson had been the driver of the Mazda, that the TCI tractor-trailer had struck the Mazda, and that **McGOWAN** had been a passenger in the Mazda at the time of the collision.

12.     At approximately 1:28 P.M., Labeaud sent Attorney A a text message.

13.     At approximately 1:55 P.M., Labeaud called Attorney A.

14.     Between approximately 2:00 P.M. and 2:02 P.M., Attorney A and Labeaud exchanged four text messages.

15.     Later the same day, Labeaud, A. Robinson, and Harris accompanied K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN** to the law firm of Attorneys A, B, and C.

16.     At the law firm of Attorneys A, B, and C, K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN** discussed Attorney D's representation of them in conjunction with the staged accident.

17.     Attorney A paid Labeaud for the K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN** staged accident.

18.     On or about June 6, 2017, Attorney D filed the K. Robinson Lawsuit in CDC.

19.     K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN** subsequently underwent treatment by doctors and healthcare providers to whom they were referred by Attorney D for "treatment" due to the staged accident.

20.     The law firm of Attorneys A, B, and C provided a luxury vehicle for **McGOWAN** to travel to Baton Rouge, Louisiana for some of her treatment, and subsequently deducted the cost from her settlement.

21.    Between on or about October 2016 and July 2018, **L. JOHNSON** received approximately $5,625.00 in loans or advances on her settlement from the law firm of Attorneys A, B, and C.

22.    Between on or about November 2016 and July 2018, **D. JOHNSON** received approximately $2,850.00 in loans or advances on her settlement from the law firm of Attorneys A, B, and C.

23.    Between on or about September 2016 and May 2018, **McGOWAN** received approximately $2,550.00 in loans or advances on her settlement from the law firm of Attorneys A, B, and C.

24.    On or about January 10, 2018, **L. JOHNSON** and **D. JOHNSON** each provided false testimony in depositions taken in conjunction with the K. Robinson Lawsuit filed by Attorney D.

25.    On or about January 11, 2018, K. Robinson and **McGOWAN** each provided false testimony in depositions taken in conjunction with the K. Robinson Lawsuit filed by Attorney D.

26.    On or about April 17, 2018, Attorney D demanded approximately $100,000.00 in settlement for K. Robinson, $325,000.00 in settlement for **L. JOHNSON**, $375,000.00 in settlement for **D. JOHNSON**, and $425,000.00 in settlement for **McGOWAN**.

27.    On or about September 3, 2018, Attorney D demanded policy limits to resolve the matter for K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN**.

28.    On or about September 24, 2018, the K. Robinson Lawsuit went to mediation and settled for a total value of approximately $545,000.00, consisting of approximately $20,000.00 in settlement for K. Robinson, approximately $100,000.00 in settlement for **L. JOHNSON**,

approximately $125,000.00 in settlement for **D. JOHNSON**, and approximately $300,000.00 in settlement for **McGOWAN**.

29.    Between on or about October 16, 2018 and October 17, 2018, Attorney D, or a representative on behalf of Attorney D, picked up four settlement checks from the Metairie office of Counsel for the Ins. Co. of Pennsylvania, TCI, and Truck Driver A.

30.    On or about October 17, 2018, the law firm of Attorneys A, B, and C deposited four settlement checks for K. Robinson, **L. JOHNSON**, **D. JOHNSON**, and **McGOWAN**.

31.    On or about October 18, 2018, the law firm of Attorneys A, B, and C issued a check to K. Robinson for approximately $7,500.10.

32.    On or about October 18, 2018, the law firm of Attorneys A, B, and C issued a check to **L. JOHNSON** for approximately $36,512.53.

33.    On or about October 18, 2018, the law firm of Attorneys A, B, and C issued a check to **D. JOHNSON** for approximately $42,550.93.

34.    On or about October 18, 2018, the law firm of Attorneys A, B, and C issued a check to **McGOWAN** for approximately $50,000.70.

35.    On or about January 16, 2020, the same day she was contacted by the FBI regarding an investigation into staged accidents, K. Robinson called Attorney D to discuss her staged accidents and Attorney D recorded the call.

36.    On or about June 16, 2020, **L. JOHNSON** contacted Attorney D to discuss the June 8, 2016 staged accident and Attorney D recorded the call.

### The June 28, 2017, Staged Accident

The below listed Overt Acts all occurred on or about June 28, 2017, unless noted otherwise.

37.    On or about June 27, 2017, the day before the collision, Hickman and Labeaud called each other.

38.    On the day of the staged accident, **ALLEN**, **T. BROWN**, **RIDLEY**, and **J. BROWN** agreed to allow Hickman to drive **ALLEN**'s Impala in order to stage an automobile accident, while Labeaud travelled behind them in a spotter vehicle.

39.    At approximately 12:35 P.M., Hickman called Labeaud.

40.    At approximately 2:08 P.M., Hickman, while driving on Tchoupitoulas Street near the intersection of Calliope Street, intentionally collided with a Frisard's tractor-trailer.

41.    After the staged accident, Hickman fled the scene, and was picked up by Labeaud in the spotter vehicle.

42.    **ALLEN** got behind the wheel of the Impala to make it appear that he was driving the vehicle at the time of the staged accident.

43.    Labeaud and Hickman flagged down the Frisard's tractor-trailer in order to inform Truck Driver B that he had hit the Impala.

44.    At approximately 2:35 P.M., Hickman called Attorney A.

45.    At approximately 3:17 P.M., Hickman called **ALLEN**.

46.    At approximately 3:29 P.M., Attorney A called Hickman.

47.    At approximately the same time, 3:29 P.M., NOPD was notified of the automobile collision.

48.    At approximately 3:39 P.M., NOPD arrived at the scene of the staged accident, at which point **ALLEN** and **J. BROWN** falsely reported that **ALLEN** had been the driver of the Impala, and that the Frisard's tractor-trailer had struck the Impala.

49.    At approximately 3:43 P.M. and 3:46 P.M., Hickman called **ALLEN**.

50.    Between approximately 3:54 P.M. and 5:26 P.M., **ALLEN** called Hickman approximately five times.

51.    At approximately 5:30 P.M., Hickman called **ALLEN**.

52.    At approximately 5:46 P.M., **ALLEN** called Hickman.

53.    At approximately 6:53 P.M., Hickman called **ALLEN**.

54.    After the collision, Hickman directed **ALLEN**, **T. BROWN**, **RIDLEY**, and **J. BROWN** to the law firm of Attorneys A, B, and C for legal representation.

55.    Attorney A paid Hickman for the **ALLEN**, **T. BROWN**, **RIDLEY**, and **J. BROWN** staged accident.

56.    Two days after the collision, on or about June 30, 2017, at approximately 10:21 A.M., **ALLEN** called Hickman, and several minutes later, at approximately 10:29 A.M. Hickman called **ALLEN**.

57.    On or about April 27, 2018, an attorney known to the Grand Jury filed the T. Brown Lawsuit in CDC.

58.    On or about June 4, 2018, an attorney known to the Grand Jury filed the J. Brown Lawsuit in CDC.

59.    On or about June 14, 2018, Attorney D filed the Allen Cross-Claim in CDC.

60.    **ALLEN**, **T. BROWN**, **RIDLEY**, and **J. BROWN** subsequently underwent treatment by doctors and healthcare providers to whom they were referred by their attorneys for "treatment" due to the staged accident.

61.    On or about January 17, 2019, **ALLEN** and **J. BROWN** each provided false testimony in depositions taken in conjunction with the T. Brown/J. Brown Lawsuit and the Allen Cross-Claim.

62.     On or about February 4, 2019, **T. BROWN** and **RIDLEY** each provided false testimony in their depositions in conjunction with the T. Brown/J. Brown Lawsuit and the Allen Cross-Claim.

63.     On or about February 19, 2019, an attorney known to the Grand Jury demanded approximately $450,000.00 in settlement for **T. BROWN** and approximately $475,000.00 in settlement for **RIDLEY**.

64.     On or about February 12, 2020, Attorney D demanded approximately $210,000.00 in settlement for **ALLEN**.

65.     On or about February 20, 2020, an attorney known to the Grand Jury made a reduced demand of approximately $295,000.00 in settlement for each of **T. BROWN** and **RIDLEY**.

66.     On or about March 17, 2020, an attorney known to the Grand Jury demanded approximately $181,055.36 in settlement for **J. BROWN**.

67.     Between on or about March 11, 2020, and on or about June 17, 2020, the T. Brown/J. Brown Lawsuit and Allen Cross-Claim settled for a total value of approximately $260,000.00, consisting of approximately $50,000.00 in settlement for **ALLEN**, approximately $70,000.00 in settlement for **T. BROWN**, approximately $90,000.00 in settlement for **RIDLEY**, and approximately $50,000.00 in settlement for **J. BROWN**.

68.     On or about March 19, 2020, two settlement checks, dated March 18, 2020, from Arch in the amounts of approximately $70,000.00 for **T. BROWN** and approximately $90,000.00 for **RIDLEY**, were delivered to an attorney known to the Grand Jury via hand delivery by counsel for Frisard's and Arch.

69.    On or about March 19, 2020, the law firm of an attorney known to the Grand Jury deposited the two settlement checks for **T. BROWN** and **RIDLEY**.

70.    On or about July 10, 2020, a settlement check, dated July 8, 2020, from Arch in the amount of approximately $50,000.00 for **ALLEN** was delivered to Attorney D via FedEx by counsel for Frisard's and Arch.

71.    On or about July 13, 2020, the law firm of Attorneys A, B, and C deposited the settlement check for **ALLEN**.

72.    On or about July 14, 2020, the law firm of Attorneys A, B, and C issued a check to **ALLEN** for $20,003.20.

73.    On or about July 10, 2020, a settlement check, dated July 8, 2020, from Arch in the amount of approximately $50,000.00 for **J. BROWN** was delivered to an attorney known to the Grand Jury via FedEx by counsel for Frisard's and Arch.

74.    On or about July 13, 2020, the law firm of an attorney known to the Grand Jury deposited the settlement check for **J. BROWN**.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### (Mail Fraud-The June 8, 2016, Staged Accident)

**A.    AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Parts A, C, and D of Count 1 are hereby re-alleged and incorporated herein by reference.

**B.    THE OFFENSE:**

On or about the date and in the approximate amounts listed below, in the Eastern District of Louisiana and elsewhere, the defendants, **ASHLEY McGOWAN, LERTRICE JOHNSON, DAVIENQUE JOHNSON**, and others known and unknown to the Grand Jury, for the purpose of

executing the scheme and artifice to defraud set forth in Part C of Count 1, did knowingly cause to be delivered by a private and commercial interstate carrier, according to the directions thereon, the following:

| COUNT | DESCRIPTION OF MAILING |
|-------|------------------------|
| 2 | October 15, 2018, Employee of AIG mailed an envelope via FedEx from Bridgeton, MO to Counsel for Ins. Co. of Pennsylvania, TCI, and Truck Driver A, **** Airline Drive, Metairie, LA 70001, containing settlement checks in the amount of $300,000.00 for **McGOWAN**, $100,000.00 for **L. JOHNSON**, and $125,000.00 for **D. JOHNSON**. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 3-4
### (Mail Fraud-The June 28, 2017, Staged Accident)

**A.    AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Parts A, C, and D of Count 1 are hereby re-alleged and incorporated herein by reference.

**B.    THE OFFENSE:**

On or about the dates and in the approximate amounts listed below, in the Eastern District of Louisiana and elsewhere, the defendants, **HERBERT ALLEN**, **TROYLYNN BROWN**, **DION RIDLEY**, **JARVIS BROWN**, and others known and unknown to the Grand Jury, for the purpose of executing the scheme and artifice to defraud set forth in Part C of Count 1, did knowingly cause to be delivered by a private and commercial interstate carrier, according to the directions thereon, the following:

| COUNT | DESCRIPTION OF MAILING |
|-------|------------------------|
| 3 | July 10, 2020, Counsel for Frisard's and Arch mailed an envelope via FedEx from Baton Rouge, LA, to Counsel for **ALLEN**, at **** Canal Street, New Orleans, LA 70119, containing a settlement check in the amount of $50,000.00 for **ALLEN**. |
| 4 | July 10, 2020, Counsel for Frisard's and Arch mailed an envelope via FedEx from Baton Rouge, LA, to Counsel for **J. BROWN**, at **** Poydras Street, New Orleans, LA 70112, containing a settlement check in the amount of $50,000.00 for **J. BROWN**. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

### NOTICE OF FORFEITURE

1.     The allegations of Counts 1 through 4 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture to the United States.

2.     As a result of conspiring to violate Title 18, United States Code, Section 1341 as alleged in Count 1 of this Indictment; committing mail fraud, in violation of Title 18, United States Code, Sections 1341 and 2 as alleged in Counts 2 through 4 of this Indictment, the defendants, **ASHLEY McGOWAN, LERTRICE JOHNSON, DAVIENQUE JOHNSON, HERBERT ALLEN, TROYLYNN BROWN, DION RIDLEY**, and **JARVIS BROWN**, shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, any property real or personal, that constitutes or is derived from proceeds traceable to said offenses, including but not limited to any property or proceeds stated-above.

3.     If any of the above-described property, as a result of any act or omission of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third person;

c.     has been placed beyond the jurisdiction of the Court;

23

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided
        without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code,

Section 853(p), forfeiture of any other property of the defendant up to the value of said property.



DUANE A. EVANS
UNITED STATES ATTORNEY

BRANDON S. LONG
SHIRIN HAKIMZADEH
BRIAN M. KLEBBA
MARIA M. CARBONI
EDWARD J. RIVERA
Assistant United States Attorneys

New Orleans, Louisiana
August 26, 2021

24

FORM OBD-34

No.

# UNITED STATES DISTRICT COURT

Eastern _____ *District of* _____ Louisiana

_____ Criminal _____ *Division*

## THE UNITED STATES OF AMERICA

vs.

ASHLEY McGOWAN, LERTRICE JOHNSON, DAVIENQUE JOHNSON, HERBERT ALLEN, TROYLYNN BROWN, DION RIDLEY, and JARVIS BROWN

## INDICTMENT FOR CONSPIRACY TO COMMIT MAIL FRAUD AND MAIL FRAUD

**VIOLATIONS: 18 U.S.C. §§ 371, 1341, and 2**

*Filed in open court this* _____ *day of* _____ *A.D.* 2021.

_____

*Clerk*

*Bail, $* _____

_____
BRANDON S. LONG,
ASSISTANT UNITED STATES ATTORNEY